IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SoClean, Inc. | Case No.: 20-cv-06288 |
| v. | Judge: Hon. John Robert Blakey |
| Does 1-861, As Identified in Exhibit 1 | Magistrate: Hon. M. David Weisman |

**MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR EXPEDITED DISCOVERY AND EMAIL ALTERNATIVE SERVICE OF PROCESS**
(*EX PARTE* UNCONSENTED)

**I. INTRODUCTION**

Plaintiff SoClean, Inc. brings this action against Defendants, as identified on Exhibit 1 of the Complaint (filed under seal Dkt. 5) (collectively, the "Defendants") for federal trademark infringement (Count I), unfair competition and false designation of origin (Count II), and violation of the Illinois Uniform Deceptive Trade Practices Act (Count III). As alleged in the Complaint, the Defendants are promoting, advertising, marketing, distributing, offering for sale and selling infringing products that utilize the Plaintiff's registered trade dress illustrated below through various websites/webstores.



Page **1** of **13**

These actions are designed to mislead consumers that the products sold are genuine SoClean products.

The Defendants utilize online merchant platforms to virtually steal the goodwill Plaintiff has in the Mark and products by utilizing Plaintiff's Mark to direct consumers to their listings. Defendants attempt to avoid liability by concealing their identities and true nature of their criminal infringement operation by utilizing pseudonyms. Plaintiff is forced to file these actions to combat Defendants' illegal infringement of the Plaintiff's registered mark, as well as to protect unknowing consumers from purchasing low-quality and ineffective products over the Internet through the Defendants and thereby lowering the consumers' esteem for legitimate SoClean goods bearing the trade dress.

Defendants directly target their unlawful business activities toward consumers in Illinois and cause harm to Plaintiff's business and interests within the Northern District of Illinois, and have caused and will continue to cause irreparable injury to Plaintiff. Defendants deceive the public by trading upon Plaintiff's reputation and goodwill by using the mark in their webstore product listings websites to sell their unlicensed goods. Defendants should not be permitted to continue their unlawful activities in trading on the goodwill and trademark rights of the Plaintiff to sell infringing goods to unsuspecting consumers within Illinois and the nation.

As such, Plaintiff respectfully requests that this Court issue *ex parte,* (1) an order for expedited discovery allowing Plaintiff to inspect and copy Defendants' records relating to the manufacture, distribution, offer for sale and sale of infringing products or listings displaying the Plaintiff's trade dress and Defendants' financial accounts; and (2) an order allowing service of process by electronic mail.

## II. STATEMENT OF FACTS

### A. Plaintiff's Trademark and Goods

SoClean, Inc. ("SoClean") is a United States based company that creates, distributes, and markets accessories and decorations for professional and consumer use. One of SoClean's primary items are filter cartridges which are utilized within ozone sanitizers that are used to sanitize CPAP units and CPAP accessories ("Products"). SoClean Products allow consumers to maintain clean CPAP units and accessories to avoid health issues.

SoClean holds a U.S. Trademark Registration (U.S. Reg. No. 6,080,195) for the nonfunctional three-dimensional configuration of a filter cartridge utilized in SoClean's ozone sanitizing units which has been used exclusively and continuously by SoClean since at least as early as January 10, 2011 ("Registered Trade Dress"). *See* Declaration of Mark Gavin at ¶¶ 4-8. The mark is displayed prominently on SoClean's products and website and webstore. SoClean has expended considerable resources advertising, marketing and promoting the Registered Trade Dress, and these efforts have resulted in substantial sales of SoClean products, as well as invaluable consumer and industry goodwill and recognition as embodied in its position as the premier retailer for decorations branded with the Registered Trade Dress. *Id.* at ¶¶ 6-11.

### B. Defendants' Illegal Activities

Defendants almost exclusively advertise their Infringing Products on their infringing webstore listings by blatantly displaying the Registered Trade Dress for their products and failing to disclose that their goods are unlicensed knock-offs so that consumers are unaware they are not buying genuine SoClean Products. *See* Declaration of Kevin Keener at ¶¶ 3, 4.

Plaintiff reviewed and confirmed that imitation knockoffs were being offered for sale to residents of the United States and the State of Illinois. *Id.* at ¶4. Plaintiff also confirmed that

Defendants and the Infringing Websites do not conduct business with Plaintiff and do not have the right or authority to use the Registered Trade Dress in association with their competing goods, for any reason. *Id.* Unknowing customers mistakenly believe the Infringing Webstore listings to be authorized listings, outlet stores or wholesalers selling genuine SoClean Products due to their infringing use of the Registered Trade Dress. *Id.*

Due to nature of Defendants' illegal counterfeiting activities, Plaintiff cannot ascertain sufficient information to identify and serve Defendants. Defendants' illegal acts should not act as a shield for their liability and their illegal activities are furthered by their obfuscation of their identity as well as business operational ties.

Further, Plaintiff's goodwill and reputation are irreparably damaged when the Registered Trade Dress is used on goods not authorized, produced or manufactured by the Plaintiff. Declaration of Mark Gavin at ¶¶16-18. This leads to brand confidence being damaged, resulting in loss of future sales and market share. *Id.* It is difficult to ascertain or calculate the extent of harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence. *Id.*

Counterfeiters, like Defendants, take away the Plaintiff's ability to control the nature and quality of the products sold, as well as consumer expectations regarding the goods' quality and fitness for a particular purpose and thereby further irreparably harm Plaintiff through their Defendants' illegal use of the Registered Trade Dress. *Id.* Loss of quality control over goods bearing the Registered Trade Dress and, in turn, loss of control over Plaintiff's reputation, is neither calculable nor precisely compensable. *Id.* at ¶¶14-18. The estimated total value of the Defendants' collective infringing sales and promotion of Counterfeit Products is approximately $1,000,000 in sales per month. *Id.* at ¶¶12-14.

Defendants employ certain tactics to conceal their identities and the full scope of their counterfeiting operation. These efforts make it virtually impossible for Plaintiff to learn Defendants' true identities. These kinds of Defendants, namely those that fence counterfeit goods online, use judicial notice to abscond with their ill-gotten profits beyond the effective reach of rights owners seeking to enforce their rights.

### III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing, and will continue to cause, irreparable harm to Plaintiff's reputation and the goodwill symbolized by the Registered Trade Dress. The Defendants willfully violated the Plaintiff's trademark rights by duping consumers into believing the sales of counterfeit products are authorized and/or genuine SoClean Products.

To stop Defendants' sale of counterfeit SoClean Products, Plaintiff respectfully requests that this Court provide Plaintiff with an avenue to obtain information from Defendants who typically hide their true identities as well as an ability to serve process on Defendants who operate online businesses and are otherwise concealing their physical presence using a variety of practices.

**A. This Court Has Jurisdiction Over the Parties and Subject-Matter.**

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper in this Court pursuant 28 U.S.C. § 1391.

Furthermore, this Court may properly exercise personal jurisdiction over Defendants since

Defendants directly target business activities toward consumers in Illinois and cause harm to Plaintiff's business within the Northern District of Illinois.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in Illinois and cause harm to Plaintiff's business within this the Northern District of Illinois. Each Defendant targets Illinois residents and has offered to sell, and on information and belief, has sold and continues to sell his/her products to consumers within the State of Illinois.

### B. Plaintiff Meets Its Burden Regarding Jurisdiction.

Without the benefit of an evidentiary hearing, Plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction; all of Plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor. *See uBID, Inc. v. GoDaddy Group, Inc*. 623 F.3d 421, 423 (7th Cir. 2010); *see also, Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) ("When determining whether a plaintiff has met his burden, jurisdictional allegations pleaded in the complaint are accepted as true unless proved otherwise by defendants' affidavits or exhibits.")

Furthermore, Illinois courts regularly exercise personal jurisdiction over websites offering for sale and selling infringing and counterfeit merchandise to Illinois residents over the Internet. 735 ILCS 5/2-209(a)(2); *See, e.g., Dental Arts Lab., Inc. v. Studio 360 The Dental Lab, LLC*, 2010 WL 4877708, 4 (N.D. Ill. 2010) ("To sell an infringing article to a buyer in Illinois is to commit a tort in Illinois sufficient to confer jurisdiction under the tort provision of the long-arm statute. Intellectual property infringement takes place in the state of the infringing sales ... for purposes of tort provisions of the Illinois long arm-statute."); *Illinois v. Hemi Group LLC*, 622 F.3d 754, 758 (7th Cir. 2010) (defendants stood ready and willing to do business with Illinois residents, and in

fact, knowingly did do business with Illinois residents by selling products to Illinois residents); *Deckers Outdoor Corp. v. Does 1-55, et al.*, No. 1:11-cv-00010, (N.D. Ill. Oct. 14, 2011) (personal jurisdiction properly asserted against defendants who offered to sell and sold counterfeit products to Illinois residents through an Internet website).

Through at least the fully interactive commercial Internet websites and Webstores operated by each Defendant, each of the Defendants has targeted and solicited sales from Illinois residents by offering shipping to Illinois and, on information and belief, have sold counterfeit Plaintiff products to residents of Illinois. Keener Decl. at ¶¶3, 4. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

### IV. PLAINTIFF IS ENTITLED TO EXPEDITED DISCOVERY

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)). A district court has wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

As demonstrated above, Plaintiff is being irreparably harmed by the manufacture, importation, offering for sale, distribution, and sale of counterfeit Plaintiff products. Defendants have gone to great lengths to conceal their true identities and/or move outside of this Court's reach by, among other things, excluding any identifiable information from Defendants' Webstores.

Without being able to discover Defendants' location and identity, Defendants would remain out of reach and their dubious tactics rewarded.

Plaintiff respectfully requests an *ex parte* Order allowing expedited discovery to discover Defendants' true identities that they use for their counterfeit sales operations. We request discovery on an expedited basis with a limited scope to obtain information on Defendants' operations and identity on Internet sales platforms and any financial accounts tied to them.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties who are in active concert with the Defendants that are given notice of the order to provide expedited discovery in this action. Fed. R. Civ. P. 65. Plaintiff is not aware of any reason that Defendants or third parties can not comply with these expedited discovery requests without undue burden. More importantly, as Defendants have engaged in many deceptive practices in an effort to hide their identities and accounts, Plaintiff's right to requested relief is in jeopardy without the means to obtain the true identity of the Defendants. Accordingly, Plaintiff respectfully requests that the expedited discovery be granted.

## V. SERVICE OF PROCESS BY EMAIL IS WARRANTED IN THIS CASE

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff requests an order allowing service of process by electronically sending the Complaint, this Order, and other relevant documents via Defendant's Webstore registration email, any known or discovered e-mail related to the webstore listed in the Complaint. Plaintiff submits that, particularly in this day and age, providing notice via e-mail is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

Electronic service is appropriate and necessary in this case because the Defendants, on information and belief: (1) have not provided names and physical addresses in the public contact

information to their respective Webstores; and (2) rely primarily on electronic communications to communicate with customers, demonstrating the reliability of this method of communication by which the Defendant may be apprised of the pendency of this action.

Plaintiff respectfully submits that an order allowing service of process via e-mail in this case will benefit all parties and the Court by ensuring that the Defendants receive immediate notice of the pendency of this action, thus allowing this action to move forward expeditiously. Absent the ability to serve the Defendants in this manner, Plaintiff will almost certainly be left without the ability to pursue a remedy.

Despite not providing reliable physical contact information directly to consumers, the Defendants, as online merchants, must utilize email to communicate with consumers. Moreover, Defendants must maintain contact with their online Webstore host company accounts to ensure they are functioning and to communicate with customers electronically. As such, it is far more likely that Defendants can be served electronically than through traditional service of process methods and that such service methods will ensure Defendant is apprised of the action and the nature of the claims therein sufficient to provide due process.

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement as the Court directs. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). The Ninth Circuit in *Rio Properties* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Id.* at 1017. The Court reached this conclusion, in part, because the defendant, like the Defendants here, conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

Similarly, a number of Courts, including the Northern District of Illinois, have held that

alternate forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Id.* at 1018; *see also, e.g., Oakley, Inc. v. Does 1-100;* No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished) (Order granting *Ex Parte* Application for Temporary Restraining Order including service of process by electronic publication and electronic mail); *True Religion Apparel, Inc. v. Does 1-100;* No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) (same); *Tory Burch LLC v. Zhong Feng, et al.*, No. 1:12-cv-09066 (N.D. Ill. Nov. 15, 2012) (unpublished); *Coach, Inc., et al. v. Does 1-100*, No. 1:12-cv-8963 (N.D. Ill. Nov. 15, 2012) (unpublished); *Tory Burch LLC, et al. v. Does 1-100*, No. 1:12-cv-07163 (N.D. Ill. Sept. 14, 2012) (unpublished); *Deckers Outdoor Corp. v. Does 1-100*, No. 1:12-cv-5523 (N.D. Ill. Jul. 24, 2012) (unpublished); *Deckers Outdoor Corp. v. Does 1-1,281*, No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished); *Deckers Outdoor Corp. v. Does 1-101*, No. 1:11-cv-07970 (N.D. Ill. Nov. 15, 2011) (unpublished); *Deckers Outdoor Corp. v. Does 1-55*, No. 1:11-cv-00010 (N.D. Ill. Feb. 3, 2011) (unpublished); *MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, No. 1:08-cv-02593, 2008 WL 5100414, *2 (N.D. Ill. Dec. 1, 2008) (holding e-mail and facsimile service appropriate); *Farouk Sys., Inc. v. Eyou Int'l Trading Co., Ltd.*, No. 4:10-cv-02672 (S.D. Tex. Aug. 2, 2010) (unpublished); *The North Face Apparel Corp., et al. v. Fujian Sharing Import & Export Ltd. Co., et al.*, No. 1:10-cv-01630-AKH (S.D.N.Y. Mar. 16, 2010) (unpublished); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (quoting *Rio*, 284 F.3d at 1018) (allowing e-mail service); *see also Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584, *1-2, (D.D.C. Jan. 30, 2008) (citing *Rio*, 284 F.3d at 1017-1018; other citations omitted) (holding that "in certain circumstances ... service of process via electronic mail ... is appropriate and may be authorized by the Court under Rule 4(f)(3) of the Federal Rules of Civil Procedure"). Plaintiff

submits that allowing service e-mail in the present case is appropriate and comports with constitutional notions of due process, particularly given the decision by the Defendants to conduct their illegal Internet-based activities anonymously or using pseudonymous linked webstores.

Furthermore, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *Rio Props. v. Rio Intern. Interlink*, 284 F.3d 1007, 1014-15 (9th Cir. 2002). As the *Rio Properties* Court explained, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Id.* at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement. There are no other limitations or requirements. *Id.* Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which a defendant may be served. *Id.* As such, this Court may allow Plaintiff to serve the Defendants via email.

Additionally, Plaintiff is unable to determine the exact physical whereabouts or identities of the Defendants due to their lack of contact information on their Webstores. Plaintiff, however, has good cause to suspect the Defendants are residents of China, or the United States of America. The United States and the People's Republic of China are both signatories to The Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (the "Convention"). Nevertheless, United States District Courts, including in this District, have routinely permitted alternative service of process notwithstanding the applicability of The Hague Convention. *See e.g., In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009) ("plaintiffs are not required to first attempt service through the Hague Convention."); *see also In re LDK Solar Secs. Litig.*, 2008 WL 2415186, *2 (N.D. Cal. Jun. 12, 2008) (authorizing alternative means of service on Chinese defendants without first attempting

"potentially fruitless" service through the Hague Convention's Chinese Central Authority); *Nanya Tech. Corp. v. Fujitsu Ltd.*, No. 1:06-cv-00025, 2007 WL 269087, *6 (D. Guam Jan. 26, 2007) (Hague Convention, to which Japan is a signatory, did not prohibit e-mail service upon Japanese defendant); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (recognizing that, while "communication via e-mail and over the internet is comparatively new, such communication has been zealously embraced within the business community").

In addition, the law of the People's Republic of China does not appear to prohibit electronic service of process. Further, Illinois procedural law specifically authorizes alternative service of process in situations like the present where Defendants actively conceal their whereabouts frustrating the administration of justice. As such, Plaintiff respectfully requests this Court's permission to serve Defendants via email or electronic publication.

### VI. Conclusion

Defendants' counterfeiting operations and trademark infringement are irreparably harming Plaintiff's business, its Registered Trade Dress and Plaintiffs' intercepted and actual consumers. Without entry of the requested relief, Defendants' sale of the counterfeit products will continue to lead prospective purchasers and others to believe that Defendants' counterfeit products have been manufactured by or emanate from Plaintiff, when in fact, they have not. Plaintiff requires the means to further identify and serve Defendants will process before they can further harm Plaintiff and consumers.

Therefore, Plaintiff respectfully requests that this Court grant the Plaintiff's Motions for Expedited Discovery aimed at Defendants' true identities and financial assets held by third-party internet sites where Defendants ply their counterfeit MORALE PATCH goods. Plaintiff further requests the Court permit Plaintiff the ability to serve Defendants using their

business email addresses as that is the more likely method to achieve the due process notice required.

Dated this 23rd of October, 2020

Respectfully submitted,

By: /s/ Kevin Keener
Kevin J. Keener
ARDC # 6296898
Keener & Associates, P.C.
161 N. Clark Street, Suite #1600
Chicago, IL 60601
(312) 375-1573
rishi.nair@keenerlegal.com
kevin.keener@keenerlegal.com
